# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | | |
|---|---|---|
| ROBERT SPRINKLE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| CITY OF DOUGLAS, GEORGIA, CLIFFORD THOMAS, in his individual and official capacity, OLIVIA PEARSON, in her individual and official capacity, JACKIE WILSON, in her individual and official capacity, and TONY PAULK, in his individual and official capacity, | : : : : : : : | |
| | : | |
| Defendants. | | No. CV507-056 |

## ORDER

Plaintiff Robert Sprinkle filed the above-captioned case against Defendants, the City of Douglas, Georgia, Clifford Thomas, Olivia Pearson, Jackie Wilson, and Tony Paulk, alleging that he was denied a promotion, and otherwise discriminated against, because of his race. Plaintiff asserts claims for wrongful denial of promotion, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), and 42 U.S.C. § 1983; violations of Equal Protection,

intentional race discrimination, and conspiracy to deprive plaintiff of his civil rights under § 1983; and violations of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA"). Plaintiff also asserts a claim for attorney's fees under 42 U.S.C. § 1988.

Presently before the Court are cross motions for summary judgment. Plaintiff has moved for partial summary judgment on his FMLA claim. Defendants have moved for summary judgment on all of Plaintiff's claims. For the reasons set out below, Plaintiff's motion for partial summary judgment will be **DENIED**, and Defendants' motion for summary judgment will be **GRANTED** in part and **DENIED** in part.

The Court has endeavored not to turn a summary judgment order into a law review article. The heft of what follows is not due to theoretical musings or scholarly asides. Rather, this Court is keenly aware of, and seeks to fulfill, the responsibilities imposed upon District Courts to address thoroughly and methodically all facts, claims and defenses presented in connection with summary judgment motions in employment discrimination cases. See Davis v. Coca-Cola Bottling Co. Consolidated, 516 F.3d 955, 979-84 (11th Cir. 2008). These responsibilities attain all the more so when, as

-2-

in the present case, there is a second amended complaint presenting twelve separate counts each of which relates to the others to some extent––against five different defendants––some of whom are sued in their official and individual capacities, and it is not always extremely clear which count relates to which defendant. The fifty-plus pages that follow are no homage to verbiage, instead they are a fulfillment of the <u>Davis</u> command.

## **BACKGROUND**

### I.   **The Parties**

Plaintiff Robert Sprinkle is a Caucasian male who has been employed with the City of Douglas Police Department since March 1990. Plaintiff's Second Amended Complaint at ¶ 13. Plaintiff is currently the most senior Corporal within the police department, having held that rank for several years. <u>Id.</u>

Defendant City of Douglas is a political subdivision of the State of Georgia located in Coffee County, Georgia. <u>Id.</u> at ¶ 7. The City of Douglas employs in excess of fifteen persons in various departments, including its police department. <u>Id.</u> Defendant Thomas is the Chief of Police for

the City of Douglas. Id. at ¶ 8. Defendant Paulk is the Mayor of the City of Douglas. Id. at ¶ 9. Defendant Pearson is a member of the Douglas City Commission and is also the Police Commissioner for the City of Douglas. Id. at ¶ 10. Defendant Wilson was at all times relevant hereto the City Manager for the City of Douglas. Id. at ¶ 11.

## II.  **The Promotion**

The uncontroverted evidence shows that, in July 2006, Plaintiff, and three other officers, applied for promotion to the rank of Sergeant within the Douglas Police Department. Id. at ¶ 16. Of the four applicants for the position, Plaintiff had the most experience with the police department and had the highest score on the sergeant's exam. Id. at ¶ 17. According to Plaintiff, he also had the recommendations of his shift sergeant, Jerome Perkins, and his shift commander, Lt. Bart McCullough, among others. Id.

On August 9, 2006, the promotion was awarded to Officer Stacy Williams. Id. at ¶ 18. Officer Williams is African-American. Id. at ¶ 24. Officer Williams had substantially less seniority within the police department, having been employed with the department for six years at the time of his

promotion, and having held the rank of corporal for less than one year. Id. at ¶ 19. It is also undisputed that Officer Williams had a lower score on the sergeant's exam than Plaintiff. Id. at ¶ 20.

Plaintiff alleges that he was denied the promotion in question because of his race. Id. at ¶ 25. Plaintiff also alleges that Defendant Thomas was in part motivated to deny Plaintiff the promotion in retaliation for Plaintiff's having sought legal counsel to pursue a Title VII race discrimination claim in connection with a prior promotion. Id. at ¶ 85. Further, Plaintiff claims that Thomas improperly considered the fact that Plaintiff had previously taken FMLA-qualifying leave in awarding Officer Williams the promotion.

Defendants, on the other hand, offer more benign reasons for denying Plaintiff the promotion, and promoting Officer Williams instead. First, in response to Plaintiff's suggestion that he was more deserving of the promotion due to his higher score on the sergeant's exam, Defendants note that the test scores were not used for comparison of individual scores between applicants but, rather, were used on a "pass/fail" basis to determine which applicants had scored a sufficiently high score to continue on in the promotion

process. Defendants' Motion for Summary Judgment at 7; Judy Carter Dep. 23-26; Clifford Thomas Dep. 42-43.

Defendant Thomas who, as Chief of Police, had the authority to decide who would be promoted to sergeant, testified that he interviewed both Plaintiff and Officer Williams and that while he considered both candidates "equally qualified," he thought Officer Williams "would be the better choice." Thomas Dep. 54. Chief Thomas provided several reasons for his decision.

First, he testified that during Plaintiff's interview, Plaintiff answered some of the questions in a way that suggested to the Chief that Plaintiff would be "too aggressive" and "confrontational," and would be unable to diffuse certain situations that he might be confronted with as sergeant. Id. at 44-45. Chief Thomas also stated that some of Plaintiff's responses were "disrespectful" toward the Chief. Id. at 44. Thomas also testified that he was "not exactly pleased" with Plaintiff's physical appearance at the interview, because Plaintiff showed up with a goatee and long sideburns, both violations of departmental policy. Id. at 46.

In contrast, Thomas testified that Officer Williams' responses to his interview questions suggested that Williams

was "more resourceful" and less confrontational than Plaintiff. Id. at 48. Chief Thomas also stated that Officer Williams presented a better demeanor and conduct than did Plaintiff. Id. at 56.[1] Further, Thomas testified that Officer Williams had, more so than Plaintiff, shown "his initiative and his overall support of the police department," by making himself "available to help out whenever [the department] need[ed] volunteers." Id. at 122. According to Thomas, this included Officer Williams' working ball games, "standing over to help out when another shift is caught up in the paperwork and they need an extra man," and volunteering to fill in on shifts when another officer was out sick. Id. at 123. Overall, Thomas considered Plaintiff "less of a team player" than Officer Williams. Id. at 64.

Apart from these personal characteristics, Chief Thomas also testified that he considered the candidates' education in making his promotion decision. Id. at 56-57. Plaintiff had a G.E.D., while Officer Williams had a high school diploma. Id. at 57. Further, Thomas considered the fact that in the seventeen years he had been with the police department,

---

[1]Chief Thomas' insights regarding Plaintiff's personality are supported by the testimony of other witnesses. For instance, Lt. McCulloch, another member of the Douglas Police Department, testified that Plaintiff "likes to stir stuff up." Bart McCulloch Dep. 15.

Plaintiff had "not attempted to advance his education any further," while Officer Williams was "seeking to go further with his education." Id. Thomas testified that Officer Williams indicated to him that he "was checking into going to college courses at the local college" at the time of his interview. Id. at 122. According to Chief Thomas, Plaintiff did not indicate that he had similar plans. Id.

Importantly, however, Thomas has not denied that he considered Plaintiff's use of sick leave as a factor in deciding who would be promoted. Quite the opposite, Thomas admits a number of times in his deposition testimony that Plaintiff's use of sick leave was taken into consideration in denying him the promotion. See, e.g., Thomas Dep. 58 ("I looked at [Plaintiff's] attendance. There have been a number of sick days used -- after 17 years with the department in the City of Douglas, I think that employee should have at least a maximum number of sick days accumulated. He doesn't. And at that time he didn't have compared to Stacey Williams, who had the maximum number of days at that time accumulated."). Defendants also admitted this fact in their letter to the EEOC, submitted in response to Plaintiff's charge of discrimination: "The attendance records of both officers were

considered. It appears that since January 2005 Robert Sprinkle used 36 days sick time, part of which was due to an injury sustained while he was physically exerting himself to apprehend a suspect. Stacy Williams used 16 days sick time . . . ." Exhibit 1 to Plaintiff's Motion for Partial Summary Judgment at ¶ 7. Plaintiff argues that this is direct evidence of a FMLA violation.

### III.  Procedural History

On November 30, 2006, Plaintiff filed a Charge of Discrimination with the EEOC. On the form filed with the EEOC, in the section entitled "discrimination based on," Plaintiff checked the box for "race." See Charge of Discrimination, Attachment to Original Complaint. Doc. No. 1. In the charge, Plaintiff alleges that he was wrongfully denied the promotion based on his race and that he was subjected to a hostile work environment, both in violation of Title VII. Id. On April 27, 2007, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff filed his original complaint on July 9, 2007.

On March 7, 2008, Plaintiff amended his complaint for the first time. In his amended complaint, Plaintiff added claims

for retaliation in violation of Title VII and § 1983 (in these retaliation claims, Plaintiff alleges that he was retaliated against for filing his complaint in this case), and claims for violation of his rights under the FMLA. On April 29, 2008, Plaintiff amended his complaint once again. In his second amended complaint, Plaintiff added another claim for retaliation in violation of Title VII. In this new retaliation claim, Plaintiff alleges that Defendants denied him the promotion in retaliation for Plaintiff's having sought legal counsel to pursue a Title VII race discrimination claim in connection with a prior promotion. Plaintiff's Second Amended Complaint at ¶ 85.

On May 29, 2008, Plaintiff filed his motion for partial summary judgment as to his FMLA claims. In support of this motion, Plaintiff points to Defendants' letter to the EEOC--in which they admit that Plaintiff's use of sick time was considered in making the promotion decision. Plaintiff also points to the deposition testimony of Defendant Thomas--who admits that he took Plaintiff's use of sick leave into consideration. Finally, Plaintiff points to the deposition testimony of Judy Carter, Human Resources Manager for the City

of Douglas--who Plaintiff claims admitted that Plaintiff's sick leave was covered by the FMLA.[2]

Plaintiff argues that this evidence, taken together, "makes it clear that the Defendants considered the Plaintiff's use of leave authorized by the FMLA as a negative factor in the consideration of whether Plaintiff should be promoted to Sergeant." Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment at 6. Accordingly, Plaintiff asserts that no genuine issue of material fact exists as to his FMLA claim and, therefore, that the Court should grant summary judgment on this claim. Id. at 10-11.

On June 30, 2008, Defendants responded to Plaintiff's motion for partial summary judgment, and filed their own motion for summary judgment as to all of Plaintiff's claims. In their response to Plaintiff's motion for partial summary judgment, Defendants take issue with Plaintiff's characterization of Ms. Carter's testimony. Defendants claim that Ms. Carter did not testify that Plaintiff's sick leave was covered under the FMLA. Defendants' Response at 1-2. Further, while acknowledging that Chief Thomas did take Plaintiff's use of sick leave into consideration when making

---

[2]It is questionable as to whether Ms. Carter actually admitted this fact. The Court will discuss Ms. Carter's testimony infra.

his promotion decision, Defendants claim that this was only one of many factors considered by Thomas. Id. at 2. Therefore, Defendants argue that Plaintiff cannot prove that he would have received the promotion "but for" Thomas' consideration of Plaintiff's use of sick leave. Id. at 10-11.

In their own motion for summary judgment, Defendants argue that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law as to all of Plaintiff's claims. First, Defendants assert that Defendants Paulk, Pearson, and Wilson are entitled to summary judgment as to Plaintiff's wrongful denial of promotion claims, as well as the FMLA claims, because these particular Defendants were not involved in the promotion decision. Defendants' Brief at 12-15.

Defendants next argue that the remaining Defendants -- the City of Douglas and Chief Thomas -- are entitled to summary judgment as to Plaintiff's Title VII claims because Defendants have provided legitimate, non-discriminatory reasons for Thomas' decision, and Plaintiff has failed to provide any evidence that these reasons were pretextual. Id. at 15-23. Defendants state that "[t]here is no evidence from which a reasonable juror could conclude that Chief Thomas'

decision was made because Sprinkle is white. Accordingly Chief Thomas and the City are entitled to summary judgment on Sprinkle's promotion claim." Id. at 24.

Next, Defendants argue that they are entitled to summary judgment on all of Plaintiff's claims alleging a hostile work environment. Defendants assert that Plaintiff has failed to allege the type of facts required by law to establish a hostile work environment cause of action. Id. at 24-27. In particular, Defendants note that Plaintiff has retained his rank within the police department, received a raise, and has received uniformly good evaluations after being denied the promotion. Id. at 24. Defendants also point to Plaintiff's deposition testimony, where he could not think of anything that had harmed his ability to perform his job. Id. Defendants claim that Plaintiff's allegations -- that the department no longer "feels like home," that he is not comfortable at work, and that the work environment has become "real tense" -- are not sufficient to establish a cause of action for hostile work environment in violation of Title VII and § 1983.

Defendants also move for summary judgment on all of Plaintiff's retaliation claims. Defendants claim that the

retaliation claims are barred because Plaintiff did not first file those claims with the EEOC, as is required by law. Id. at 27. Defendants claim that because Plaintiff did not check the box for retaliation on his EEOC Charge for Discrimination, and because he did not mention anything in the Charge about any claim for retaliation, these claims are barred as a matter of law. Id. at 29.

In the alternative, Defendants claim that they are entitled to summary judgment on all of Plaintiff's retaliation claims because the alleged acts of retaliation do not constitute grounds for recovery as a matter of law. Id. at 30. Defendants argue that most of the incidents cited by Plaintiff in support of his retaliation claims related to his filing of the EEOC charge and complaint actually predate the filing of these documents and, therefore, could not be a result of retaliation for pursuing his claims. Id. at 31. Defendants also argue that certain statements made by Chief Thomas to Plaintiff, which Plaintiff claims constitute retaliation for his filing the EEOC charge and complaint, are not "protected activity" within Title VII's anti-retaliation provision. Id. at 32.

Finally, Defendants assert that they are entitled to summary judgment on Plaintiff's FMLA claims. First, Defendants claim that the FMLA does not cover accrued, paid sick leave. Id. at 38. Next, Defendants assert that Plaintiff cannot make a claim for retaliation under the FMLA because he cannot establish that he suffered an "adverse employment decision" within the contemplation of the FMLA. Id. Lastly, Defendants contend that even if Plaintiff has some sort of retaliation claim under the FMLA, they are still entitled to summary judgment because Chief Thomas did not consider Plaintiff's use of sick leave as a negative factor against him, but instead considered it a positive factor for Williams. Id. at 41.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome

of the suit under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor." <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991)(en banc)(internal quotation marks omitted).

## DISCUSSION

### I. FMLA Claims

Plaintiff claims that by taking into consideration Plaintiff's use of FMLA-qualifying sick leave in deciding who would be promoted to sergeant, Defendants violated the FMLA (Count VII). Plaintiff further claims that, because Defendants acted under the color of state law in violating the FMLA, they are also liable under § 1983 (Count IX). Both parties have moved for summary judgment on these claims, alleging that there are no genuine issues of material fact.

Plaintiff alleges that Defendants retaliated against him for taking FMLA-qualifying sick leave. In <u>Martin v. Brevard</u>

County Public Schools, the Eleventh Circuit Court of Appeals

stated the standard for proving FMLA retaliation:

> To prove FMLA retaliation, an employee must show
> that his employer intentionally discriminated
> against him for exercising an FMLA right. Unlike an
> interference claim, an employee "bringing a
> retaliation claim faces the increased burden of
> showing that his employer's actions were motivated
> by an impermissible retaliatory or discriminatory
> animus."

No. 07-11196, 2008 U.S. App. LEXIS 20580, at *13-14 (11th Cir.

Sept. 30, 2008) (Per curiam) (internal citations omitted).

Defendants argue that Plaintiff "cannot make a claim for

retaliation under the FMLA because he cannot establish that he

suffered an 'adverse employment decision' within the

contemplation of the FMLA." Defendants' Brief at 38.

Defendants further assert that "the FMLA entitles a covered

employee to reinstatement, not to promotion." Id. at 39.

While the FMLA does not require an employer to promote an

employee who would otherwise not be entitled to a promotion,

the Act specifically makes it unlawful for an employer to

consider an employee's use of FMLA-qualifying leave in making

employment decisions.

The FMLA provides, "[i]t shall be unlawful for any

employer to discharge or in any other manner discriminate

against any individual for opposing any practice made unlawful

by this title." 29 U.S.C. § 2615 (emphasis added). Even more applicable to the facts of this case, one federal regulation promulgated pursuant to the FMLA provides, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, <u>promotions</u> or disciplinary actions . . . ." 29 C.F.R. § 825.220(c) (emphasis added).

The standard of proof in an FMLA retaliation case differs based on whether the plaintiff relies upon direct or circumstantial evidence to support his or her claim. When circumstantial evidence is relied upon, the Eleventh Circuit has directed courts to apply the traditional burden-shifting framework for Title VII cases announced by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Graham v. State Farm Mutual Ins. Co.</u>, 193 F.2d 1274, 1283 (1999). However, where the plaintiff presents direct evidence of retaliation, the trial court must assess the FMLA claim as follows:

> "The trial judge must initially make a credibility finding as to whether or not plaintiff's proffered direct evidence . . . is to be believed . . . The trial court must also make a finding of fact as to whether or not the decision maker 'relied upon [impermissible] considerations in coming to its decision.' In other words, the fact finder must determine whether [the impermissible factor] played a motivating part in an employment decision . . . . If the trial court both credits the direct evidence

-18-

and finds that the evidence played a substantial role in the employment decision at issue, then the defendant can avoid liability only by proving that it would have made the same decision even if it had not allowed such discrimination to play a role."

Peters v. Cmty. Action Comm., Inc., 977 F. Supp. 1428, 1434 (M.D. Ala. 1997) (quoting Haynes v. W.C. Caye & Co., Inc., 52 F.3d 928, 932 (11th Cir. 1995)).[3]

The parties disagree as to which approach the Court should follow in this case. Plaintiff claims that he has presented direct evidence of an FMLA violation and, therefore, the "motivating factor" standard from Price Waterhouse should apply. Defendants, on the other hand, argue that the Court should apply the McDonnell Douglas burden-shifting framework.

The Eleventh Circuit defines "direct evidence" as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting Damon v.

_____

[3]This standard has been referred to as the "motivating factor" standard, and originates from the United States Supreme Court's decision in Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989)(plurality opinion). Although the standard was developed by the Supreme Court in Price Waterhouse in the context of a trial on the issue of liability for a Title VII claim, courts have used the same standard to decide motions for summary judgment on FMLA retaliation claims. See, e.g., Peters. Further, although the standards set forth in Price Waterhouse have been superceded by statute, see Landgraf v. USI Film Prods., 511 U.S. 244 (1994), this only affects the "motivating factor" standard's application to Title VII cases, and not FMLA cases such as this one.

<u>Fleming Supermarkets of Fla., Inc.</u>, 196 F.3d 1354, 1358 (11th Cir. 1999)).  "Direct evidence is 'evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption.'"  <u>Id.</u> (quoting <u>Burrell v. Bd. of Trustees of Ga. Military Coll.</u>, 125 F.3d 1390, 1393 (11th Cir. 1997).  Eleventh Circuit precedent illustrates that "only the most blatant remarks, whose intent could mean nothing other than to [retaliate] on the basis of some impermissible factor constitute direct evidence of [retaliation]."  <u>Id.</u> (quoting <u>Rojas v. Florida</u>, 285 F.3d 1339, 1342 n.2 (11th Cir. 2001)).

Plaintiff in this case has presented direct evidence of retaliation under the FMLA.  First, Plaintiff points to Defendants' letter to the EEOC, submitted by Defendants in response to Plaintiff's Charge.  In this letter, in an attempt to rebut Plaintiff's claims of racial discrimination, Defendants admit that Chief Thomas considered Plaintiff's use of sick leave as a factor in deciding who would be promoted to sergeant.  Exhibit 1 to Plaintiff's Motion for Partial Summary Judgment at ¶ 7.  Plaintiff also points to the fact that, numerous times throughout his deposition testimony, Chief Thomas acknowledges that he took Plaintiff's use of sick time

into consideration when making his decision. See, e.g., Thomas Dep. 58.

This evidence reflects a "retaliatory attitude" correlating to the retaliation complained of by Plaintiff. Wilson, 376 F.3d at 1086. It is evidence that, if believed, proves the existence of retaliation without inference or presumption. Id. Further, it is a "blatant remark, whose intent could mean nothing other than to [retaliate] on the basis of some impermissible factor." Id. Therefore, Plaintiff has presented direct evidence of FMLA retaliation.[4]

Defendants argue that Plaintiff's use of sick time was not covered by the FMLA and, therefore, the fact that Chief Thomas considered it in making his decision does not violate the Act. The uncontroverted evidence, however, suggests otherwise. In their letter to the EEOC, Defendants acknowledge that Chief Thomas took into consideration the fact that Plaintiff took sick leave after he was injured on the job while apprehending a suspect. Exhibit 1 to Plaintiff's Motion for Partial Summary Judgment at ¶ 7. In both Plaintiff's

---

[4]While the Court believes that Plaintiff has presented direct evidence of an FMLA violation and, therefore, that the "motivating factor" test from Price Waterhouse applies, the Court also believes that the outcome would be the same if it found that this evidence is instead circumstantial in nature and, therefore, applied the McDonnell Douglas burden-shifting framework.

deposition testimony and in a sworn affidavit submitted by Plaintiff to the Court, Plaintiff claims that he took this sick leave as a result of injuries he sustained to his back while attempting to apprehend a suspect, and that during this time, Plaintiff was unable to work or perform other regular daily activities and was under the continuing treatment of a physician. Robert Sprinkle Dep. 26-28; Sprinkle Aff. ¶¶ 18-19. Defendants have presented no evidence to suggest that this is untrue.

The FMLA provides that "an eligible employee[5] shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2512(a)(1)(D). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Because Plaintiff has presented credible evidence establishing that his injury involved "continuing treatment by a health care provider," because the evidence shows that this injury made him unable to

---

[5]Defendant does not contest that Plaintiff is an "eligible employee."

perform the functions of his position as an employee, and because Defendants have presented no evidence to the contrary, the Court finds that this leave was covered by the FMLA.

Further, the fact that neither Plaintiff nor Defendants, at the time Plaintiff took this leave, classified it as FMLA-qualifying leave is inapposite. A federal regulation promulgated pursuant to the FMLA states: "An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. The employee need <u>not</u> expressly assert rights under the FMLA or even mention the FMLA . . . The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 28 C.F.R. § 825.302(c)(emphasis added).

There is no indication here that Plaintiff failed to provide notification sufficient to make the department aware of the reasons for his leave. In fact, the evidence suggests that the department knew of the reasons for Plaintiff's leave. Because it qualified as FMLA leave, it does not matter whether or not Plaintiff invoked the FMLA by name. If the police

department required more information to determine whether Plaintiff's request fell under the FMLA, it was the department's duty to investigate further.

Next, Defendants argue that, because Plaintiff's leave was classified as "paid sick leave," it was not covered by the FMLA. Defendants' Response at 4. The Court rejects this argument. In <u>Strickland v. Water Works & Sewer Board</u>, the Eleventh Circuit held that the district court had "misinterpreted the FMLA as permitting employers with paid sick leave policies to choose whether an employee's FMLA-qualifying absence will be either unpaid but protected by the Act, or paid but unprotected." 239 F.3d 1199, 1204 (11th Cir. 2001). The court in <u>Strickland</u> went on to hold that "an employer cannot escape liability under the Act for the period during which the employee, whose leave qualifies under the FMLA, is receiving his wages in the form of sick (or other) pay." <u>Id.</u> at 1205. The court further stated:

> Neither Congress nor the Department of Labor could have intended . . . to allow employers to evade the FMLA by providing their employees with paid sick leave benefits. Otherwise, when an employee misses work for an illness that qualifies under both his employer's paid sick leave policy and the FMLA, his employer could elect to have the absence count as paid sick leave rather than FMLA leave and would then be free to discharge him without running afoul of the Act.

Id. Defendants ask this Court to adopt the same interpretation of the FMLA that was expressly rejected by the Eleventh Circuit in Strickland. The Court, therefore, rejects Defendants' argument that paid sick leave is not covered by the FMLA.

Having found direct evidence in support of Plaintiff's FMLA claims, the Court will apply the "motivating factor" standard set forth in Price Waterhouse and applied by the Eleventh Circuit in Haynes. First, the Court must decide whether the proffered direct evidence is to be believed. Haynes, 52 F.3d at 932. There is no indication in the record that the evidence--consisting of Defendants' own statements and testimony--is not truthful. Of course, at trial, Defendants will have ample opportunity to prove to the fact-finder that Plaintiff's proffered evidence is untruthful.

Next, the Court must determine "whether or not the decision maker relied upon [impermissible] considerations in coming to its decision." Id. As discussed, the FMLA and federal regulations expressly prohibit an employer from considering an employee's FMLA-qualifying leave "as a negative factor in employment actions, such as hiring, promotions or disciplinary actions . . . ." 29 C.F.R. § 825.220(c). It is

clear in this case that Defendant Thomas considered Plaintiff's FMLA leave as a negative factor in making his promotion decision, in violation of the law.[6]

Although Plaintiff has presented direct evidence that Chief Thomas impermissibly considered his FMLA leave in making his promotion decision, thereby precluding summary judgment in favor of Defendants on these claims, summary judgment in favor of Plaintiff is also inappropriate. Instead, Plaintiff's FMLA claims should be submitted to a jury to decide whether Thomas' consideration of this impermissible factor played a "substantial" or "motivating" factor in his promotion decision. Price Waterhouse, 490 U.S. at 250; Haynes, 52 F.3d at 932; Peters, 977 F. Supp. at 1434.[7]

Further, even if Plaintiff can prove, at trial, that Chief Thomas' impermissible consideration was a "substantial" or "motivating" factor in his employment decision, Defendants

---

[6]Defendants claim that Chief Thomas did not use Plaintiff's FMLA-qualifying leave as a negative factor against Plaintiff, but instead used it as a positive factor in favor of Officer Williams in making his promotion decision. Defendants' Response at 10. Binding precedent, Aristotelian logic, and plain-old common sense unite to enable the Court to roundly reject Defendants' argument in this regard.

[7]The plurality opinion in Price Waterhouse explained what it meant by a consideration being a "motivating" factor in an employment decision: "In saying that [the impermissible consideration] played a motivating part in an employment decision, we mean that, if we asked the employer at the moment of the decision what its reasons were and if we received a truthful response, one of those reasons would be [the impermissible consideration]." 490 U.S. at 250.

can still avoid liability "by proving that it would have made the same decision even if it had not allowed [the impermissible consideration] to play a role." Price Waterhouse, 490 U.S. at 250; Haynes, 52 F.3d at 932; Peters, 977 F. Supp. at 1434.

Defendants claim that Defendant Wilson, who at the time of the promotion was the Douglas City Manager, is entitled to summary judgment on Plaintiff's FMLA claims because she played absolutely no role in Defendant Thomas' promotion decision and, therefore, cannot be said to have violated the FMLA. As Plaintiff notes in his brief, however, there is, in fact, evidence that Wilson played a role in the promotion decision. In fact, in her deposition testimony, Wilson admits that, pursuant to department policy, she was required to approve the Chief's promotion decisions, and that she did, in fact, review and approve the Chief's decision to promote Officer Williams over Plaintiff. Jackie Wilson Dep. 21-23. Therefore, Defendant Wilson is not entitled to summary judgment on Plaintiff's FMLA claims.

However, Defendants Thomas and Wilson are entitled to summary judgment on Plaintiff's FMLA claims insofar as they are being sued in their individual capacities. This is

because, in this Circuit, "a public official sued in his individual capacity is not an 'employer' subject to individual liability under the [FMLA]." <u>Wascura v. Carver</u>, 169 F.3d 683, 686 (11th Cir. 1999).[8]

Finally, because there is absolutely no evidence suggesting that Defendants Paulk or Pearson played any role in Chief Thomas' impermissible consideration of Plaintiff's FMLA-protected activity,[9] these Defendants are entitled to summary judgment on Plaintiff's FMLA claims.

## II.  **Race Discrimination under Title VII and Section 1983**

Plaintiff next claims that Defendants wrongfully denied him the promotion in question on the basis of his race in violation of Title VII and § 1983 (Counts I and III). Plaintiff further claims that Defendants violated § 1983 by

---

[8]Although Defendants have not raised this issue, it is appropriate for the Court to do so <u>sua</u> <u>sponte</u>. This is because "where a defendant in an FMLA suit does not meet the statutory definition of 'employer,' there is no federal subject matter jurisdiction over the claim against that defendant." <u>Wascura</u>, 169 F.3d at 685 (<u>citing</u> <u>Douglas v. E.G. Baldwin & Assocs., Inc.</u>, 150 F.3d 604, 608 (6th Cir. 1998)). District Courts are obligated to address subject matter jurisdiction <u>sua sponte</u>. <u>See, e.g.</u>, <u>Cadet v. Bulger</u>, 377 F.3d 1173, 1179 (11th Cir. 2004).

[9]Contrary to Defendants' contentions, there is, in fact, evidence that Defendants Paulk and Pearson played a role in Chief Thomas' promotion decision. <u>See</u> Section II, <u>infra</u>. However, their participation, if any, relates to race discrimination and had nothing to do with Plaintiff's FMLA leave.

depriving Plaintiff of Equal Protection (Count VI), by intentionally discriminating against Plaintiff on the basis of race (Count V), and by conspiring to deprive Plaintiff of his civil rights (Count VI). Defendants assert that they are entitled to summary judgment on all of these claims.

Although these claims actually make up five separate counts in Plaintiff's complaint, the Court will analyze them as one. This is because "the analysis of disparate treatment claims under § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). See also Abel v. Dubberly, 210 F.3d 1334, 1338 (11th Cir. 2000)(holding that Title VII and § 1983 claims have the same elements where the claims are based on the same set of facts).

Title VII prohibits discrimination in employment against any individual "because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e(2)(a)-(m). Title VII applies to all persons regardless of their race. See, e.g., McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 286-87 (1976). A violation of Title VII can also serve as a basis for liability under § 1983, if the plaintiff proves that the defendant violated Title VII while acting

under color of state law.  <u>See, e.g.</u>, <u>Hafter v. Melo</u>, 502 U.S. 21, 25 (1991).

Specifically, Plaintiff's Title VII claims are claims for disparate treatment.  "The framework for analyzing . . . Title VII disparate treatment claim[s] is well-settled." <u>Denney v. City of Albany</u>, 247 F.3d 1172 (11th Cir. 2001).  In <u>Denney</u>, the Eleventh Circuit held:

> Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence . . . Absent direct evidence, a plaintiff may prove intentional discrimination through the familiar <u>McDonnell Douglas</u> Paradigm for circumstantial evidence claims.

247 F.3d at 1182-83 (internal citations omitted).  Here, Plaintiff has not provided any direct evidence of intentional race discrimination.  Therefore, the Court will analyze Plaintiff's race claims under the burden-shifting framework of <u>McDonnell Douglas v. Green</u>.  The Court in <u>Denney</u> described the appropriate analysis:

> Under the rubric of [<u>McDonnell Douglas</u>], "to establish a prima facie case of discriminatory failure to promote, a plaintiff must prove: (1) that he is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted." Once these elements are established, the defendant has the burden of producing a legitimate, non-discriminatory reason for the challenged employment action . . . If such

a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination.

247 F.3d at 1183 (internal citations omitted).

Here, Plaintiff has established a prima facie case of discriminatory failure to promote, by proving that he is a member of a protected class, was qualified for and applied for the promotion, was rejected, and that another equally qualified employee who was not a member of the protected class was promoted. In fact, Defendants admit that Plaintiff meets the prima facie requirements. Defendants' Motion for Summary Judgment at 16.

Next, under McDonnell Douglas, the burden shifts to Defendants to produce a legitimate, non-discriminatory reason for the challenged employment action. Defendants have met this burden by providing several legitimate, non-discriminatory reasons for Chief Thomas' promotion decision. Therefore, the burden shifts back to Plaintiff to prove that the reasons offered by Defendants are pretextual. "To avoid summary judgment, [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." Brooks v. County Comm'n, 446 F.3d 1160, 1163 (11th Cir. 2006).

To establish pretext, Plaintiff points to the statements of several department officials, indicating their belief that the promotion decision was motivated by race. For instance, in his deposition, Assistant Chief of Police Danny Fussell testifies that Chief Thomas was pressured to make the promotion decision based on race. The following is an exchange between Plaintiff's counsel and Fussell:

> Q. Do you believe that [Chief Thomas] was pressured by Tony [Paulk] and/or Olivia [Pearson] concerning this promotion decision?
> A. I do.
> Q. Do you believe that they were motivated in part by race?
> A. Yes.
> Q. Do you believe that they were motivated to see a black person promoted and to not promote Robert because he was white?
> A. Yes.

Danny Fussell Dep. 58-59. Further, in his sworn affidavit to the Court, Plaintiff alleges that both Human Resources Director Judy Carter and City Counsel member Josey admitted to Plaintiff that the promotion decision was made on the basis of race. Sprinkle Aff. ¶¶ 2-4.

In <u>Bass v. Board of County Commissioners</u>, the Eleventh Circuit held that, although statements made by a non-decision maker indicating that a promotion was based on race do not rise to the level of direct evidence, they can provide

significant circumstantial support for Plaintiff's claims. 256 F.3d 1095, 1105 (11th Cir. 2001). Such circumstantial evidence of race discrimination is enough to satisfy Plaintiff's burden of establishing pretext, thereby defeating summary judgment. In Bass, the plaintiff introduced evidence "of county officials' emphasis on hiring and promoting based on race." Id. This evidence consisted of testimony suggesting that the chief of the fire department was pressured by county officials to promote women and African-American applicants. Id. at 1106-7. Based on this evidence, the court in Bass concluded that "a jury could reasonably find that [the defendant] had a policy of racial discrimination." Id. at 1107.

Here, Plaintiff has provided the same type of evidence that was deemed sufficient in Bass. Although the testimony relied upon by Plaintiff is that of a non-decision maker, this testimony provides sufficient circumstantial evidence of racial discrimination. Accordingly, the Court finds that Plaintiff has presented "significantly probative evidence showing that [Defendants'] asserted reason[s] [are] merely a pretext for discrimination," and, therefore, summary judgment

is not proper as to Plaintiff's race-based Title VII and §
1983 claims. <u>Brooks</u>, 446 F.3d at 1163.[10]

As with the FMLA claims, Defendants claim that Defendants
Paulk, Pearson, and Wilson are entitled to summary judgment on
Plaintiff's wrongful denial of promotion claims because they
were not involved in the promotion decision. The Court
rejects this argument. First, as already discussed, Defendant
Wilson has admitted that, pursuant to department policy, she
was required to approve the Chief's promotion decisions, and
that she did, in fact, review and approve the Chief's decision
to promote Officer Williams over Plaintiff. Wilson Dep. 21-
23. Therefore, Defendant Wilson is not entitled to summary
judgment on these claims. Further, Plaintiff has presented
evidence that Defendants Paulk and Pearson pressured Thomas to
make his promotion decision based on race. <u>See</u> Fussell Dep.
58-59. In fact, Fussell's testimony suggests that Thomas
would not have made such a decision if it were not for Paulk
and Pearson's influence. While Defendants will have the
opportunity, at trial, to rebut this testimony, or to call
into question Fussell's credibility, this evidence raises a

---

[10]Plaintiff asserts several alternative arguments in order to prove
pretext. Having already found sufficient evidence of pretext to defeat
summary judgment, however, the Court need not deal with these alternative
arguments.

genuine issue of material fact as to Paulk and Pearson's involvement in the promotion decision. Therefore, Defendants Paulk and Pearson are not entitled to summary judgment on these claims.

Finally, Defendants Thomas, Pearson, Wilson, and Paulk assert that, insofar as Plaintiff attempts to recover against them individually, they are entitled to summary judgment on qualified immunity grounds. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Wood v. Kesler</u>, 323 F.3d 872, 877 (11th Cir. 2003). The process for analyzing a defense of qualified immunity is well established:

> To be eligible for qualified immunity, the official must first establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred. Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity. In order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a [statutory] violation and (2) that the [statutory] right the defendant violated was "clearly established" at the time he did it.

<u>Crosby v. Monroe County</u>, 394 F.3d 1328, 1332 (11th Cir. 2004).

First, the Court must determine whether the officials here were performing a "discretionary function" at the time the alleged violation of federal law occurred. "To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'" Id. (quoting Holloman v. Harland, 370 F.3d 1252, 1263 (11th Cir. 2004)). There is no question that Defendants Thomas and Wilson were engaged in discretionary functions in this case. Department policy specifically put Thomas, as Chief of Police, in charge of promotion decisions, subject to review and approval by Wilson, as City Manager. Although the analysis as to Defendants Pearson and Paulk is less obvious, the record supports the conclusion that they too were engaged in discretionary functions. As Police Commissioner and Mayor, these defendants played a role, albeit a less direct role, in the policy decisions of the police department, including promotion decisions. In fact, as discussed above, testimony has been presented which indicates that Pearson and Paulk exercised a large degree of influence over Chief Thomas in his promotion decisions. Therefore, all of the individual defendants were engaged in discretionary functions for

purposes of qualified immunity. See Foster v. McGrail, 844 F. Supp. 16, 23-24 (D. Mass. 1994) (the phrase "discretionary function" is broad enough to include both "high-level decisionmakers" and "lower level officials.").

However, they are only entitled to qualified immunity if their conduct did not violate "clearly established statutory rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "A right is clearly established if, in light of preexisting law, the unlawfulness of the official's conduct is 'apparent' . . . This standard does not require that the specific conduct in question was previously found to be unlawful; the state of the law need only give an offic[ial] 'fair warning' that his conduct is unlawful." Cooper v. Dillon, 403 F.3d 1208, 1220 (11th Cir. 2005).

In this case, the rights allegedly violated by Defendants were "clearly established" at the time of their actions and, therefore, they are not entitled to qualified immunity. It is "patently obvious" that intentional, race-based discrimination in public employment is prohibited. See, e.g., Smith v. Lomax, 45 F.3d 402, 407 (11th Cir. 1995). As the Eleventh Circuit has recently held, "the right to be free from racial

discrimination in the public workplace [is] a clearly established constitutional right of which a reasonable official would have known." <u>McMillan v. Dekalb County</u>, 211 Fed. App'x 821, 823-24 (11th Cir. 2006). Therefore, Defendants are not entitled to qualified immunity at this time.

### III. <u>Title VII Hostile Work Environment Claims</u>

Next, Plaintiff claims that Defendants violated Title VII, as well as § 1983, by creating a "work environment that is hostile to white employees." Complaint at ¶ 33. Plaintiff further alleges that "said hostile environment has significantly altered the terms and conditions of Plaintiff's employment and unreasonably interfered with his job performance." <u>Id.</u>

The employee has the burden of proving a hostile work environment under Title VII. <u>Edwards v. Wallace Cmty. College</u>, 49 F.3d 1517, 1521 (11th Cir. 1995). To establish a hostile work environment, Plaintiff must demonstrate that:

> (1) he belongs to a protected group; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms of and conditions of employment and thus create a

discriminatorily abusive work environment; and (5) the employer is responsible for that environment under a theory of either direct or vicarious liability.

Godoy v. Habersham County, 211 Fed. App'x 850, 853-54 (11th Cir. 2006)(citing Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)).

The following factors are important in analyzing whether harassment objectively altered an employee's terms or conditions of employment:

> "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfere[d] with the employee's job performance."

Id. (quoting Miller, 277 F.3d at 1276). Additionally, the Eleventh Circuit has held that courts should "consider the alleged conduct in context and cumulatively, looking at the totality of the circumstances, to determine if an environment is hostile. Teasing, offhand comments, and isolated incidents do not constitute discriminatory changes in the terms and conditions of employment." Jones v. City of Lakeland, No. 07-12720, 2008 U.S. App. LEXIS 12355, at *13-14 (11th Cir. June 6, 2008) (internal citations omitted).

In support of his hostile work environment claims, Plaintiff first alleges that department officials, including Chief Thomas, showed favoritism toward African-American officers in discipline and other matters. For instance, Plaintiff points to the deposition of Assistant Chief Fussell, in which he testifies that Thomas failed to cooperate with other supervisors in disciplining Officer Williams. Fussell Dep. 68. According to Plaintiff, this testimony suggests that African-American officers received special treatment. Id. Plaintiff also points to the deposition testimony of Sergeant Jerome Perkins as evidence that another African-American officer, Mac Anthony, had violated department policy, yet was not subject to discipline. Jerome Perkins Dep. 16-22, 35.

Plaintiff also focuses on several alleged instances where African-American officers were allowed to disregard the chain of command and report directly to the chief, and where African-American officers were allowed to wear plain clothes to football games, in violation of department policy. Fussell Dep. 62-63; 66-67.

Next, Plaintiff claims that the "single greatest contributor to the hostile environment suffered by white employees was the pervasive involvement of Defendants Pearson

and Paulk in operational and personnel decisions within the police department and other departments within the city." Plaintiff's Reply at 40. Plaintiff cites testimony indicating that Pearson "had a strong interest in advancing minority participation in city government and employment," and that she "wanted more minorities hired as city employees." Id. at 41. Plaintiff points to three occasions where Pearson allegedly intervened on behalf of city employees because they were African-American. Plaintiff asserts that "[t]hese and other actions by Defendants Pearson and Paulk had a considerable negative impact on the morale of white officers." Id. at 43. It is important to note that none of these alleged instances of interference by Pearson on behalf of African-American employees involved the police department.

At most, Plaintiff's evidence shows that Defendants have displayed favoritism to African-American officers on isolated occasions. However, Plaintiff does not point to one instance where Defendants acted in a manner that could reasonably be interpreted as "sufficiently severe or pervasive [as] to alter the terms of and conditions of employment." Godoy, 211 Fed. App'x at 854. Instead, Plaintiff has admitted that he has retained his rank as Corporal, received a raise, and has

received uniformly good evaluations.  Sprinkle Dep. 44-45.  In fact, Plaintiff could not think of anything in particular that has harmed his ability to perform his job.  Id. at 45-46.

When given a chance at his deposition to articulate how the isolated incidents he lists as constituting a hostile work environment have impacted his job, Plaintiff responded:

> Well, the way it is or used to be up there, I've expressed this to [Fussell] and some of other people with the city I advised to be as comfortable there as I am home . . . I'm not comfortable there anymore.  Some of the officers that are new and don't know me very well, I'm sure it affected their opinion of me.  It's made it a real uneasy working environment.  Officers that used to speak with me, until this come up, don't speak anymore.  Even the ones that do, some of them are real standoffish and its never been that way up until now . . .
> Q.  Anything else?
> A.  Not that I can think of right off.

Sprinkle Dep. 56-57.

Complaints by a plaintiff that the atmosphere of the work environment is "real tense" or that he had been made to feel unwelcome by fellow employees are insufficient to constitute a hostile work environment as a matter of law.  See, e.g. McGhee v. City of Forsyth, No. 5:06-CV-397, 2007 U.S. Dist. LEXIS 90116, *11-12 (M.D. Ga. Dec. 7, 2007).  In McGhee, the plaintiff, an African-American employee claiming hostile work environment, alleged that she was discriminatorily disciplined

and that white employees, in general, had a more satisfactory work environment than African-American employees.  Id.

The court in McGhee granted summary judgment in favor of the defendant, because the plaintiff failed to prove that the workplace was so "permeated with discriminatory intimidation, ridicule, and insult, that it [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Id. at *12 (quoting Miller v. Kentworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)).

Similar to McGhee, there is no evidence in this case that the alleged incidents of racial favoritism have risen to the point of being so severe and pervasive as to alter the terms of Plaintiff's employment.  Further, the fact that African-American officers might have made offhand jokes and remarks of an insulting nature toward white officers does not change the equation.  As already discussed, "[t]easing, offhand comments, and isolated incidents do not constitute discriminatory changes in the terms and conditions of employment."  Jones, 2008 U.S. App. LEXIS 12355, at *13-14.  See also Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1242 (11th Cir. 2001) ("Hurt feelings are not sufficient to establish a cause of

action . . . the protections of Title VII simply do not extend to everything that makes an employee unhappy."); Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1302 (11th Cir. 2007)("Title VII does not enact a general civility code for the workplace.").

Because Plaintiff has failed to satisfy his burden of showing that the actions of Defendants were "sufficiently severe or pervasive to alter the terms of and conditions of employment and thus create a discriminatorily abusive work environment," Defendants are entitled to summary judgment on Plaintiff's hostile work environment claims.


**IV.   Title VII Retaliation Claims**

In his complaint, Plaintiff asserts two separate retaliation claims.  First, Plaintiff claims that Defendant Thomas was, in part, motivated to deny Plaintiff the promotion in question in retaliation for Plaintiff's having sought legal counsel to pursue a Title VII race discrimination claim in connection with a prior promotion (Count XI).  Specifically, Plaintiff alleges that he "had sought counsel to pursue a claim of race discrimination arising out of the prior sergeant's promotion in which Sgt. Tony Ward, who is African-

-44-

American, was promoted instead of Plaintiff. . . . Defendant Thomas was aware of Plaintiff's having sought said counsel and was motivated to retaliate against him for having done so." Complaint ¶ 86.

Plaintiff also claims that Defendants retaliated against him for filing his EEOC charge and complaint in this case (Count VIII). In particular, Plaintiff claims that, in retaliation for filing his charge and complaint in this case, Defendants have failed to make new openings within the department available to him, have assigned him to an inferior patrol car, have failed to assign him overtime, and have refused to allow him to work a part-time job while not on duty with the department. Complaint ¶ 71(a)-(d). Finally, Plaintiff claims that, by retaliating against him in violation of Title VII, Defendants are also liable under § 1983 (Count X).

## A. Pre-Charge Retaliation:

Plaintiff's claim that he was denied the promotion based, in part, on his retention of an attorney to pursue a Title VII discrimination claim in connection with a prior promotion, is barred as a matter of law.

"Before a potential plaintiff may sue for discrimination under Title VII, [he] must first exhaust [his] administrative remedies.  The first step down this path is filing a timely charge of discrimination with the EEOC."  Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001)(internal citations omitted).  "Further, a Title VII plaintiff cannot bring any claim in a lawsuit that was not included in his or her EEOC charge."  Thomas v. Bed Bath & Beyond, Inc., 508 F.Supp.2d 1264, 1275 (N.D. Ga. 2007)(citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974)).

In Gregory v. Georgia Department of Human Resources, the Eleventh Circuit held that "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  355 F.3d 1277, 1280 (11th Cir. 2004)(internal quotation marks omitted)(quoting Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000)). Under this precedent, although a plaintiff need not specifically allege retaliation in his or her EEOC charge in order to be able to bring a claim for retaliation, the facts alleged in the EEOC charge must be such that a claim of

retaliation would be expected to grow out of the charge. The following two cases help clarify this rule.

In _Dowlatpanah v. Wellstar Health System, Inc._, the plaintiff marked only the box for "national origin" discrimination and did not mark the box for "retaliation" in his EEOC charge. No. 1:05-CV-2752, 2007 U.S. Dist. LEXIS 12993, at *13 (N.D. Ga. Feb. 26, 2007). The court noted that, not only did the plaintiff not mention retaliation anywhere in his charge, but there was no factual basis in the charge suggesting that any action was taken against him as a result of complaints he made regarding his discrimination. _Id._ at *13-14. Further, the court held that "there [was] nothing in the report that would allow the EEOC to infer that retaliation occurred." _Id._ at *14. Therefore, the court concluded that the plaintiff's retaliation claims "could not reasonably be expected to grow out of [his] EEOC charge," and granted summary judgment in favor of the defendant.

The court in _Dowlatpanah_ distinguished the facts before it from the facts in _Gregory_. In _Gregory_, the Eleventh Circuit held that a pro se plaintiff was not barred from pursuing her retaliation claim against her employer, even though she did not specifically allege retaliation in her EEOC

charge.  <u>Gregory</u>, 355 F.3d at 1280.  The court in <u>Gregory</u> concluded that "[t]he facts alleged in [plaintiff's] EEOC charge could have reasonably been extended to encompass a claim for retaliation."  <u>Id.</u>  However, in a subsequent case, the Eleventh Circuit seems to have significantly limited the scope of <u>Gregory</u>, by noting that, in <u>Gregory</u>, the court:

> [R]efused to bar a plaintiff's judicial claims when that plaintiff, not represented by counsel, inadvertently did not mark her EEOC charge form as including retaliation claims; the facts in that plaintiff's EEOC charge indicated that she was fired after complaining about race and gender discrimination, which reasonably would lead to an EEOC investigation of retaliation.

<u>Hillemann v. Univ. of Cent. Fla.</u>, 167 Fed. App'x 747, 749 (11th Cir. 2006).

The facts in this case are closer to those in <u>Dowlatpanah</u> than to those in <u>Gregory</u>.  Here, not only did Plaintiff not mention retaliation anywhere in his EEOC charge, but there was absolutely no factual basis in the charge suggesting that he was denied the promotion as retaliation for pursuing a Title VII claim.  Therefore, it cannot be said that Plaintiff's pre-charge retaliation claim could "reasonably be expected to grow out of the charge of discrimination."  <u>Gregory</u>, 355 F.3d at 1280.  Accordingly, Plaintiff failed to exhaust his administrative remedies regarding his pre-charge retaliation

claim, and Defendants are entitled to summary judgment on this claim.

## B.  Post-Charge Retaliation:

In his other retaliation claim, Plaintiff alleges that, after filing his EEOC charge and complaint in this case, Defendants retaliated against him in violation of Title VII.

Specifically, Plaintiff claims that Thomas removed Plaintiff "from the patrol car to which he had been assigned and assigned him to a patrol car that is among the oldest and least serviceable in the fleet," and that Plaintiff's requests for maintenance on this patrol car have been ignored. Sprinkle Aff. ¶ 20.  Plaintiff also claims that he has been denied the opportunity to work overtime on more than one occasion, and that his requests to work a part-time job when not on duty with the police department have been unreasonably delayed.  Id. at ¶¶ 22-23.[11]  According to Plaintiff, Defendants have also failed to make certain promotion opportunities available to him, and "have ostracized and refused to speak to [Plaintiff]."  Id. ¶ 24.

---

[11]In his affidavit, Plaintiff admits that Defendant Thomas eventually approved Plaintiff's request to work part-time when not on duty with the police department, but claims that Defendant Thomas "unreasonably delayed approval of that request," causing Plaintiff to lose the opportunity to obtain the part-time job.

As an initial matter, Plaintiff's post-charge retaliation claims are not jurisdictionally barred for failure to allege them in his EEOC charge. In Baker v. Buckeye Cellulose Corp., the plaintiff alleged that her employer retaliated against her for filing an EEOC charge. 856 F.2d 167, 168 (11th Cir. 1988). The defendant argued that the court did not have jurisdiction to consider the retaliation claims because the plaintiff had not asserted them in her EEOC charge. Id. The court in Baker rejected this, noting that, under the defendant's theory, the plaintiff would have to file a new charge with the EEOC alleging retaliatory actions, obtain a right-to-sue letter, and either file a new complaint or amend the existing complaint. Id. The court held that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." Id. at 168-69. Like the plaintiff in Baker, Plaintiff in this case is not barred from raising his post-charge retaliation claim in his complaint.

Defendants claim that they are entitled to summary judgment on Plaintiff's post-charge retaliation claims. The

so-called "participation clause" of Title VII's anti-retaliation section provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has made a charge, testified, or assisted or participated in any manner in an investigation, proceeding, or a hearing under this [Title].

42 U.S.C. § 2000e-3(a).

The Eleventh Circuit has held:

> To establish a prima facie case of retaliation, the plaintiff must show (1) that she engaged in statutory protected expression; (2) that the suffered an adverse employment action; and (3) that there is some causal relation between the two events . . . Once the prima facie case is established, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. As with a Title VII discrimination claim, the employer's burden is 'exceedingly light.' The plaintiff must then demonstrate that the employer's proffered exception are a pretext for retaliation.

Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal quotations and citations omitted).

Plaintiff has easily established a prima facie case for Title VII retaliation. Plaintiff has presented evidence to show that he was engaged in statutorily protected expression (i.e., filing his EEOC charge and complaint), and that he suffered adverse employment actions. As to the causation requirement, the Eleventh Circuit has held that a plaintiff

need only prove that the protected activity and negative employment action "are not completely unrelated." Meeks, 15 F.3d at 1021. This element can be satisfied by presenting circumstantial evidence as to the "cumulative effect of these employment actions and their timing." EEOC v. Reichhold Chems, Inc., 988 F.2d 1564, 1571 (11th Cir. 1993). Plaintiff has met this burden.

Next, the burden shifts to Defendants to provide a legitimate, non-retaliatory reason for their actions. Although this burden is "exceedingly light," Defendants in this case have failed to offer one legitimate, non-retaliatory explanation for their alleged actions. Instead, Defendants categorically deny Plaintiff's allegations. This is simply not sufficient to meet their burden.

Further, even if Defendants had supplied the Court with a legitimate, non-retaliatory reason for their actions, summary judgment would still be inappropriate, because Plaintiff has come forward with sufficient evidence of pretext to avoid summary judgment. "To survive summary judgment, the plaintiff must . . . come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude

that the reasons given by the employer were not the real reasons for the adverse employment decision." <u>Tolbert v. Follett Higher Educ. Group, Inc.</u>, No. 3:05-CV-159, 2006 U.S. Dist. LEXIS 11770, at *24 (M.D. Ala. March 7, 2006)(internal quotation marks omitted)(<u>quoting</u> <u>Cooper v. Southern Co.</u>, 390 F.3d 695, 726 (11th Cir. 2004)). The evidence presented by Plaintiff is sufficient to raise a genuine issue of fact as to pretext.

Although Defendants City of Douglas and Thomas are not entitled to summary judgment on Plaintiff's post-charge retaliation claims, Defendants Pearson, Paulk, and Wilson are entitled to summary judgment on these claims. This is because Plaintiff has presented absolutely no evidence suggesting that any of these defendants were involved in the alleged acts of retaliation. In fact, Plaintiff specifically alleges that it was Chief Thomas who engaged in the alleged acts. <u>See</u> Sprinkle Aff.

Further, Chief Thomas is not entitled to summary judgment on qualified immunity grounds. This is because "the right to be free from retaliation is clearly established as a . . . statutory right under Title VII." <u>Gardner v. City of Camilla</u>, 186 Fed. App'x 860, 864 (11th Cir. 2006).

## C. Title VII Retaliation under Section 1983:

Plaintiff alleges that Defendants' retaliation in violation of Title VII also constitutes a violation of § 1983 (Count X). Defendants move for summary judgment on this claim as well. Insofar as this claim is based on Defendants' alleged pre-charge retaliation, it is barred as a matter of law for failure to exhaust administrative remedies. However, insofar as this claim is based on the alleged post-charge retaliation, only Defendants Pearson, Paulk, and Wilson are entitled to summary judgment.

## V. <u>Attorney's Fees Under Title VII and Section 1988</u>

Finally, Plaintiffs claim that they are entitled to recover their attorney's fees and all costs associated with bringing this action as provided by 42 U.S.C. § 1988 and Title VII. Section 1988 provides that, in an action brought under § 1983, the court, in its discretion, may allow the prevailing party a "reasonable attorney's fee." 42 U.S.C. § 1988(b). The attorney's fee provision of Title VII is substantially identical. 42 U.S.C. § 2000e-5(k).

Because the Court has denied summary judgment on several of Plaintiff's Title VII and § 1983 claims, the Court will

have the authority, after trial, to award the prevailing party attorney's fees and related costs, if it finds such an award to be appropriate at that time.

## CONCLUSION

For the above reasons, the Plaintiff's motion for partial summary judgment (Doc. No. 41) is **DENIED**. Defendants' motion for summary judgment (Doc. No. 60) is **GRANTED** in part, and **DENIED** in part, as follows:

(1) As to Counts I, III, IV, V, and VI of Plaintiff's Second Amended Complaint, Defendants' motion for summary judgment is DENIED.

(2) As to Count II of Plaintiff's Second Amended Complaint, Defendants' motion for summary judgment is GRANTED as to all Defendants.

(3) As to Counts VII, and IX of Plaintiff's Second Amendment Complaint, Defendants' motion for summary judgment as to Defendant City of Douglas is DENIED. As to Defendants Clifford Thomas and Jackie Wilson, Defendants' motion for summary judgment is GRANTED insofar as these individuals are sued in their individual capacity, but Defendants' motion for summary judgment is DENIED insofar as these individuals are sued in their official capacity. As to Defendants Olivia Pearson and Tony Paulk, Defendants' motion for summary judgment is GRANTED.

(4) As to Count VIII of Plaintiff's Second Amended Complaint, Defendants' motion for summary judgment as to Defendants City of Douglas and Clifford Thomas is DENIED. As to the remaining Defendants, Defendants' motion for summary judgment as to Count VIII is GRANTED.

(5) As to Count XI, Defendants' motion for summary judgment is GRANTED as to all Defendants.

(6) As to Count X, Defendants' motion for summary judgment is GRANTED insofar as Plaintiff's claims relate to the allegations of pre-charge retaliation as set forth in Count XI, but DENIED as to Defendants City of Douglas and Clifford Thomas insofar as they relate to the allegations of post-charge retaliation as set forth in Count VIII.

(7) As to Count XII, Defendants' motion for summary judgment is DENIED.


**SO ORDERED** this  21st  day of November, 2008.

_____
Judge, United States District Court
Southern District of Georgia